In re LESLIE OIL AND GAS CO. INC., Debtor.

Bankruptcy No. 2–88–02131.

United States Bankruptcy Court, S.D. Ohio, E.D.

Feb. 24, 1989.

James H. Gordon, Columbus, Ohio, for debtor.

Alec Wightman, Columbus, Ohio, for Pride Petroleum Inc.

Stephen C. Fitch, Columbus, Ohio, for Official Unsecured Creditors' Committee.

Lawrence J. Hackett, Office of the U.S. Trustee, Columbus, Ohio.

## OPINION AND ORDER ON REQUEST FOR REJECTION OF MANAGEMENT CONTRACT

BARBARA J. SELLERS, Bankruptcy Judge.

On September 23, 1988 the Official Unsecured Creditors' Committee ("Committee") requested the Court to order Leslie Oil and Gas Co. Inc., the debtor-in-possession in this Chapter 11 case ("Debtor"), to reject a management contract with Pride Petroleum Incorporated ("Pride"). That request was supported by the United States Trustee ("Trustee") and opposed by the Debtor. Although the Committee later withdrew its request, the Trustee continued to press for rejection. Rather than force the Trustee to file his own separate request and begin the process anew, the Court has considered the Trustee's statement in support of the Committee's request as a motion for relief. The parties argued their positions before the Court on December 22, 1988, and the matter was taken under advisement.

The Court has jurisdiction in this proceeding under 28 U.S.C. § 1334(b) and the General Order of Reference previously entered in this district. This contested matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

## FACTUAL BACKGROUND

The facts underlying this dispute are essentially uncontested and are part of the Court's record by testimony, agreements of the parties and representations contained

in a disclosure statement prepared by the Debtor and Pride in support of a joint plan of reorganization now pending before the Court.

The Debtor is an Ohio corporation formed in 1976 which explores, develops and produces oil and gas resources in six counties in Ohio. The Debtor has interests in approximately 85 wells. It uses its own resources to acquire oil and gas leasehold interests and develop those interests through joint venture and limited partnership arrangements. Typically the Debtor serves as the general managing partner of the limited partnerships and operates both partnership and joint venture wells pursuant to separate operating agreements. The Debtor generally retains a portion of the working interest in each of the wells it operates.

Pride is an Ohio corporation formed on April 14, 1988 for the sole purpose of managing and acquiring the Debtor's business. Neither Pride nor its principals had any relationship with the Debtor prior to entering into the agreement which is the subject of this contested matter.

On April 22, 1988, three days prior to the bankruptcy filing, Pride and the Debtor entered into an arms-length negotiated management agreement (the "Agreement"). Under the terms of the Agreement Pride agreed to provide the Debtor with financial and tax accounting services, to supervise production from the oil and gas wells and gas pipeline operation and to perform other operating and administrative services. The Debtor agreed to pay Pride $15,000 each month for those services. Pride was granted a security interest in the Debtor's assets to secure payment of its fees and received an option to purchase the Debtor's assets. Apparently the security interest was never perfected.

Other provisions of the Agreement which are relevant to this dispute obligated the Debtor to seek to reorganize under Chapter 11 and to support any plan proposed by Pride. Further, the Debtor's sole shareholder, by separate agreement, executed an irrevocable proxy authorizing Pride to vote the shareholder interests in the Debtor.

As a result of the Agreement, certain management changes occurred and principals of Pride were established as officers and directors of the Debtor.

On April 25, 1988 the Debtor filed its petition under Chapter 11 of the Bankruptcy Code. The Debtor has continued to operate under the Agreement although it has not been assumed or rejected. The Debtor has not sought to have Pride appointed by the Court as a professional person. Under the jointly proposed plan of reorganization, Pride will purchase a new issue of the Debtor's common stock and the Agreement will be assumed.

## LEGAL ISSUES

The Trustee asserts that the only issue now before the Court is whether Pride is a professional person, subject to appointment by the Court under the requirements of 11 U.S.C. § 327. The Trustee contends, first, that Pride is such a professional person and, second, as such, that Pride cannot qualify for appointment because it is not disinterested within the meaning of 11 U.S.C. § 101(13)(A), (D) or (E).

On the other hand, Pride argues that it is not a professional person within the meaning of 11 U.S.C. § 327 and that even if it is found to be such a person, it may be appointed to manage the business affairs of the Debtor.

## CONCLUSIONS OF LAW

■ A professional person is one who plays a central role in the administration of a bankruptcy debtor's affairs and is intimately involved in the administration of the debtor's bankruptcy estate. *In the Matter of Seatrain Lines, Inc.,* 13 B.R. 980, 981 (Bankr.S.D.N.Y.1981). It is not the usual onlooker's perception that a person's occupation is a "profession" which governs, but rather the substance of the person's role in a debtor's operations. *Committee of Asbestos–Related Litigants and/or Creditors v. Johns–Manville Corp. (In re Johns–Manville Corp.),* 60 B.R. 612 (Bankr.S.D.N.Y.1986).

As this Court previously has observed, whether a person becomes a professional person for purposes of § 327(a) often "relates to the degree of autonomy within which the person will operate and the degree of supervision or direction required by the debtor-in-possession or the trustee." *In re Frederick Petroleum Corp.*, 75 B.R. 774 (Bankr.S.D.Ohio 1987). A primary purpose for requiring appointment and supervision by the Court if a person is a professional within the meaning of § 327(a) is to "prevent abuse of the bankruptcy estate that may result from placing persons pursuing their own interests in autonomous positions over the estate." *Frederick* at 780.

█ The scope of the delegation required in the Agreement between the Debtor and Pride differs from that contemplated in *Frederick*. In *Frederick*, ultimate decision-making authority was proposed to be delegated to the "professional person". Section § 3(f) of the Agreement between the Debtor and Pride, however, specifically states that Pride is not to be "responsible for management of or participation in business decisions regarding financial matters, legal matters, securities matters, audits, or bankruptcy or reorganization matters (except to the extent set forth hereinafter), nor general business decisions, all of which shall remain with the Company."

Retention of major decision-making power in the Debtor and delegation to Pride only of routine administrative functions and services, without more, limits Pride's role to events in the ordinary course of the Debtor's business which are not central either to the bankruptcy proceeding or to major policy decisions. That distinction should keep Pride from becoming a "professional person". The complicating factor, however, is the assignment of stock voting rights to Pride prior to the bankruptcy filing.

Assignment to Pride of voting rights in the stock of the Debtor has the practical effect of merging the identity of the Debtor with that of Pride. Moreover, that unification, which occurred pre-petition, permits Pride to control all functions of the Debtor.

Practically, there no longer exists a Debtor able to make decisions independently of Pride.

Despite the centralization of control through the merger of interests and powers, the Court believes it would be a mischaracterization to find that Pride is a professional person subject to appointment by the Court upon the request of the Debtor. The terms of the Agreement do not confer the necessary autonomy on Pride. Further, the assignment of equity voting rights is a matter of corporate governance not normally set aside by the Court, absent evidence of overreaching or inappropriate behavior by a pre-existing creditor, which Pride was not. In essence Pride is the Debtor's management and equity voice now and at the time the bankruptcy case was filed. As such, the focus of inquiry by the Court and creditors changes to an examination of the terms of the Agreement and the reasonableness of the compensation granted to Pride thereunder. The emphasis now must be on the fiduciary relationship Pride assumed toward creditors of the insolvent Debtor when it essentially replaced the Debtor's management.

The Court's finding that Pride is not a professional person which must be appointed by the Court under the standards of 11 U.S.C. § 327(a) does not leave creditors and other parties in interest without remedy for abuses which might arise in connection with the Agreement. If appropriate facts exist, parties may seek rejection of the Agreement as an executory contract which is not in the best interest of the bankruptcy estate. Parties also may seek reduction, termination or return of fees paid to Pride if such fees are thought to be excessive, unreasonable or unnecessary. *In re Lyon & Reboli, Inc.*, 24 B.R. 152 (Bankr.E.D.N. Y.1982). Any inappropriate transfer to Pride in connection with the Agreement could be set aside under various provisions of the Bankruptcy Code. In addition, upon request, the exclusive period could be shortened or a trustee could be appointed. No such relief has been requested by the Trustee in this matter, however.

In conclusion, the Court finds that Pride and its principals, although fiduciaries for creditors of an insolvent company, are not professional persons within the meaning of § 327(a) of the Bankruptcy Code. Accordingly, Pride's status as an insider does not render inappropriate its operations of various of the Debtor's business functions. Nor should Pride's contribution of capital to purchase the Debtor's shares through a plan of reorganization be construed as self-dealing any more than any Debtor's bootstrap plan, contribution of capital, or retention of shareholder interests would be considered to be inappropriate. Except for legal title to Pride's shares which continues to be held by former management, Pride is the Debtor. As such, it does not require approval of the Court to employ itself.

Consistent with the foregoing, the Trustee's request that the Court order the Debtor to reject the Management Agreement is denied.

IT IS SO ORDERED.