### In re MELBELL ASSOCIATES, INC., Debtor.

### Bankruptcy No. 287–01357–B–11. Motion No. WFS–1.

United States Bankruptcy Court, E.D. California.

March 30, 1989.

---

**32**

Dennis K. Cowan, Redding, Cal., for debtor.

William F. Stein, William F. Stein, Inc., Sacramento, Cal., for Secured Creditor Wells Fargo Bank, N.A.

## MEMORANDUM OF DECISION

DAVID E. RUSSELL, Bankruptcy Judge.

William F. Stein, Esq., brought the above-entitled motion regularly before this court on November 15, 1988 on behalf of Wells Fargo Bank, N.A. (hereinafter "Wells Fargo") for the purpose of compelling Melbell Associates, Inc., (hereinafter "Debtor") to reimburse it for certain fees, costs, and charges as a matter of contractual right. Dennis K. Cowan, Esq., appeared and objected to the motion on the Debtor's behalf. The matter was taken under submission following oral argument.

### FINDINGS OF FACT

The following relevant facts are undisputed. On October 17, 1977, Debtor's predecessor in interest, "Melbell, Inc.", executed a promissory note in the amount of $382,000.00 in favor of Crocker National Bank (Wells Fargo's predecessor in interest), secured by a deed of trust on real property located in Shasta County, California, improved by an office building (herein-

after "the Building"). The promissory note provided for monthly payments of $3,412.00 to be made beginning on January 1, 1978 and continuing through October 16, 1992. Simple interest accrued at 9.75% per annum.

After falling behind on its monthly payments, the Debtor filed its voluntary Chapter 11 petition with this court on March 11, 1987. Except for some deposits, receivables and office furniture and equipment of nominal value, the Debtor's only asset was the Building, which was encumbered by the Wells Fargo lien and three junior deeds of trust. On May 15, 1987, the Debtor filed its motion to sell the Building, and, upon the consent and approval of Wells Fargo, this court entered its order approving the sale for $697,000 to Anthony and Mary Ellen Marques on July 27, 1987 (hereinafter "the 7/27/87 Order"), which provided in pertinent part as follows;

3. The proceeds of said sale shall be used first to pay escrow expenses and expenses of sale, second to the holder(s) (sic) of the Deeds of Trust on the premises, including, but not limited to, *the complete pay-off* of the indebtedness to Wells Fargo Bank, ...

5. Wells Fargo Bank ... consents to the sale/exchange of real property authorized herein only subject to the following terms and conditions;

a. Prior to or simultaneous with the closing of the escrow consummating the sale/exchange authorized herein, *all monies* owing to Wells Fargo Bank pursuant to the promissory note and deed of trust ... *shall be paid in full* to Wells Fargo Bank; ... (emphasis added).

On September 18, 1987 the Debtor filed its Disclosure Statement and Plan of Reorganization (hereinafter "the Plan"). The Disclosure Statement and Plan provided, *inter alia,* that

... Pursuant to (the 7/27/87 Order), the sales proceeds are to be used first to pay the holders of the deeds of trust on the premises, in full ... Unless substantial disputes exist with secured creditors of the debtor the balance of the sale proceeds will be used to pay all claims in full

... In the opinion of debtor's counsel all Classes are unimpaired within the meaning of Bankruptcy Code § 1124 ...

... Escrow is open and pending and is expected to close prior to the hearing on confirmation of this Plan ...

... These claims (Class 1, including Wells Fargo) will be paid as set forth above after consummation of the sale of the ... Building and confirmation of this plan of reorganization at their existing contract rate ...

Wells Fargo filed its objections to the Disclosure Statement and Plan on the grounds that the proposed sale was about to fall through and that Wells Fargo was not adequately protected in that it had not received any payments on its promissory note since December 1986. Apparently conceding that the sale authorized by the 7/27/87 Order had fallen through, the Debtor obtained several continuances on the hearing for approval of the Disclosure Statement. On January 22, 1988 the Debtor filed its motion for an order authorizing the sale of the property to Gary G. Arel for $650,000.00. Debtor filed a supplement to its motion on February 24, 1988. Both the motion and supplement stated that the sale proceeds would be used first to pay sale and escrow expenses and then to payment to the holders of deeds of trust on the property. The supplement also provided in pertinent part, as follows;

"The motion requests that all liens and encumberances be paid upon close of escrow unless disputes exist regarding the nature and amount of any such lien, in which event undisputed claims will be paid from escrow and the balance of the proceeds will be held by debtor's counsel, in trust, subject to further order of the court ..."

The court authorized the sale according to the above terms on March 11, 1988 (hereinafter "the 3/11/88 Order").

The Disclosure Statement was approved on March 25, 1988. Wells Fargo mailed its demand to the sale escrow on April 15, 1988 for the total amount of $364,342.61, consisting of unpaid principal of $325,-359.28, interest to April 15, 1988 of $30,-841.31 (with interest accruing at $88.12 per day thereafter), accumulated late charges of $2,866.00, attorney fees of $1,957.35, prepayment penalty of $2,871.59, appraisal fee of $342.00, reconveyance fee of $35.00, statement fee of $50.00, and amendment fee of $20.00. On April 18, 1988 the Debtor's president mailed a letter to Wells Fargo advising it that the Debtor had instructed the escrow holder to pay Wells Fargo's demand, but that the late charges, attorney fees, appraisal fee, statement fee and amendment fee were being paid under protest and that the Debtor would file suit in the near future to recover the protested items and $50,000.00 in damages.

Thereafter, and on or before April 21, 1988, escrow closed and Wells Fargo subsequently received a check for $346,641.19 from the escrow holder which represented its principal and accrued interest through close of escrow. The Debtor's plan was confirmed on May 17, 1988 (Wells Fargo neither voted on the plan nor attended the confirmation hearing). Wells Fargo and the Debtor attempted to negotiate their differences, apparently withiout success, since Wells Fargo has filed its present motion on October 20, 1988.

In the present motion, Wells Fargo seeks payment from th impounded net proceeds of the sale for $2,866.08 in late charges $70.00 for the preparation of beneficiary statements, $35.00 in reconveyance fees, $3,728.15 in attorney's fees and costs as of October 17, 1988, and interest on the above total at the legal rate from April 29, 1988 to the date of payment.[1] The parties do not dispute the fact that because the Building was sold for an amount far in excess of Wells Fargo's claim under the note and deed of trust, Wells Fargo qualifies as an "oversecured creditor" for the purposes of 11 U.S.C. § 506(b).

1. Wells Fargo has apparently waived the $2,871.59 prepayment penalties and appraisal fees of $342.00.

## DISCUSSION

■ As a preliminary matter, Debtor's reliance (unsupported by analysis or authorities) on the recent Ninth Circuit Court of Appeals decision of *In re Entz–White Lumber and Supply, Inc.*, 850 F.2d 1338 (1988), in support of the proposition that late charges may not be imposed upon a debtor who has "cured" his defaults by paying the obligee on the note the accrued principal and interest then due under the note, must be rejected.

The fact that the real property in the case at bar was sold before the confirmation of what was essentially a plan of liquidation clearly distinguishes this case from *Entz–White* where the debtor sought to retain the encumbered property by "curing" the default and reinstating the loan. Wells Fargo's rights are thus determined under the provisions of 11 U.S.C. § 506(b) rather than as an unimpaired creditor under 11 U.S.C. § 1124(2).

### 1. *Propriety of Late Charges and Miscellaneous Fees;*

■ Having established that Wells Fargo is an oversecured creditor, and that reasonable costs and charges may be assessed against the Debtor in this case, the issue becomes whether the proposed charges are "reasonable" as required by 11 U.S.C. § 506(b). The deed of trust provides for the imposition of a "handling" charge equal to 4% of the amount of the delinquent payment if a payment is not received within 10 days of the date that it becomes due.[2]

This court agrees with Wells Fargo that the above-mentioned late charge of 4% is not an unreasonable charge under the circumstances.[3] (See *In re Dalessio*, 74 B.R. 721 (9th Cir.B.A.P.1987) (10% late charge allowed) citing *Mack Financial Corporation*, 789 F.2d 1083 (4th Cir.1986) (5% late charge is reasonable and allowable)).[4] There being no objection to Wells Fargo's representations as to the number of delinquent payments, and because there appear to be no errors in Wells Fargo's computations as set forth in the declaration of Steven Thiros (Filed 10/20/88), this court finds that the sum of $2,866.08 represents an accurate and reasonable approximation of handling charges incurred by Wells Fargo and, therefore, constitutes an allowable secured claim under § 506(b).

Likewise, with respect to the $50.00 demanded by Wells Fargo for a statement fee, the $20.00 for an amendment thereto, and the $35.00 as a reconveyance fee, all of these charges were set forth in ¶ 4.02(a) of the deed of trust (supra) and there is nothing in the record to indicate that the charges were unreasonably inflated or otherwise made in bad faith. Consequently, the above-mentioned charges of $105.00 shall also constitute an allowed secured claim in favor of Wells Fargo under § 506(b).

---

**2.** ¶ 4.02 of the above-mentioned Deed of Trust describes the Debtor's liability for certain miscellaneous charges as follows;

(a) Trustor agrees to pay Beneficiary for each statement of Beneficiary as to the obligations secured hereby, furnished at Trustor's request, the maximum fee allowed by law, or if there be no maximum fee, then such reasonable fee as is charged by Beneficiary as of the time said statement is furnished. Trustor further agrees to pay the charges of Beneficiary for any other service rendered Trustor, or on its behalf, connected with this Deed of Trust or the indebtedness secured hereby, including without limitation the delivery to an escrow holder of a request for full or partial reconveyance of this Deed of Trust ...

(b) Trustor recognizes that in the event any payment secured hereby is not made within ten (10) days after it becomes due and payable, Beneficiary will incur extra expenses in handling the delinquent payment, the exact amount of which is impossible to ascertain, but that a charge of four percent (4%) of the amount of the delinquent payment would be a reasonable estimate of the expense so incurred ...

**3.** 4% of a $3,412.00 monthly payment equals approximately $136.48.

**4.** The mere fact that the late charge provision in the deed provides for a straight percentage of the entire installment regardless of whether a portion of that installment has in fact been remitted to Wells Fargo does not necessarily render the provision unreasonable. There is no reason to believe that Wells Fargo would expend any less effort attempting to recover a partial payment than it would if the borrower were in complete default on the installment.

### 2) *Propriety of Attorneys' Fees:*

Generally, allowance of attorneys' fees and cost is *mandatory* when they are provided for in the underlying agreement, when the creditor is oversecured, and so long as those fees and costs are "reasonable". (*In re Dalessio*, supra, 74 B.R. 721, 723; *In re Le Marquis Associates*, 81 B.R. 576, 578 (9th Cir.B.A.P.1987); *In re Salazar*, 82 B.R. 538, 540 (9th Cir.B.A.P.1987)). Whether the fees and costs are reasonable depends in large part on whether "the creditor incurred expenses and fees that fall within the scope of the fees provision in the agreement, and took the kinds of actions that similarly situated creditors might reasonably conclude should be taken ..." (*In re Carey*, 8 B.R. 1000, 1004 (Bankr.S.D.Cal. 1981)).

Both the promissory note and the deed of trust provide for the payment of attorney's fees and costs in the event of the Debtor's default. Paragraph 1.12 of the deed of trust also provides for fees in enforcing any of Wells Fargo's rights, by suit or otherwise.[5] Having thoroughly examined counsel's declarations and schedules of fees as well as the Debtor's objections to the requested fees, this court finds no evidence to support a finding that any of the fees and costs described therein were not directly related to the protection of Wells Fargo's rights as the beneficiary under the above-mentioned deed of trust. Furthermore, there is nothing in the record to indicate that either Wells Fargo or its counsel acted at any time in bad faith, or otherwise with an intent to harass or delay the Debtor's reorganization effort.[6]

On the contrary, the conduct of Wells Fargo's counsel was exemplary as evidenced by his continuing cooperation with Debtor's counsel despite the delays occasioned by the failure to consummate the first authorized sale of the Building and getting the second authorized sale closed. Wells Fargo made its position clear when it consented to the Order of 7/27/87. Its reliance on the Debtor's good faith (to the Debtor's financial benefit) in not insisting that the Plan and Order of 3/11/88 contain the exact wording of the 7/27/87 Order proved to be misplaced as shown by the Debtor's subsequent conduct. The Debtor lulled Wells Fargo into complacency and then with practically no warning, closed escrow and refused to pay off Wells Fargo *in full* as the latter quite reasonably expected. Consequently, this court must find that the sums of $2,940.00 in fees, and $205.15 in costs constitute reasonable expenditures under the circumstances and, because the bank is oversecured and reimbursement of such fees and costs are provided for in the deed of trust held by Wells Fargo on the Debtor's property, the sum of $3,145.15 constitutes an allowed secured claim pursuant to § 506(b).

### 3) *Propriety of Interest on Allowed Secured Claims:*

Wells Fargo's request for an award of interest on the unpaid portion of its allowed secured claim as of the April 29, 1988 is equally reasonable. Calculating in-

---

**5.** ¶ 1.12 of the Deed of Trust sets forth the borrower/Debtor's liability for attorneys' fees and costs as follows;

Trustor shall ... pay all costs and expenses including without limitation cost of evidence of title and reasonable attorneys' fees, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed of Trust or to enforce or establish any other rights or remedies of Beneficiary hereunder ... Trustor further agrees to pay all reasonable expenses of Beneficiary (including fees and dispursements of counsel) incident to the protection of the rights of Beneficiary hereunder, and enforcement or collection of payment of the Note or any Future Advances whether by judicial or non-judicial proceedings, or in connection with any bankruptcy, insolvency, arrangement, reorganization or other debtor relief proceeding of Trustor ...

**6.** The court does note, however, that Wells Fargo's schedule of fees accounts only for those fees and costs incurred through September 30, 1988 and, furthermore, reflects that the aggregate amount of fees and costs incurred by the bank for the period between April 1, 1987 and September 30, 1988 is $3,145.15 ($2,940.00 in fees and $205.15 in costs). Consequently, without further declarations of expenses this court will only allow Wells Fargo's fees and costs up to the amount listed in its schedules.

terest at the contractual rate of 9.75% [7] this court finds that Wells Fargo is entitled to $241.27 interest on the late charges and miscellaneous allowed charges,[8] and a total of $227.30 interest on attorneys' fees as of March 1, 1989.[9]  Interest will accrue on the claim at $1.63 per day ([$6,116.23 × 9.75%] ÷ 365) thereafter until paid.

## DISPOSITION

In accordance with the above discussion, this court finds that the following charges constitute allowed secured claims payable to Wells Fargo as an oversecured creditor pursuant to 11 U.S.C. §§ 502 and 506(b);

1) $2,866.08   (Late Charges)
2) $  105.00   (Reconveyance and State-
              ment Fees)
3) $3,145.15   (Attorneys' Fees and Costs)
4) $  241.27   (Interest on Late Charges
              and Misc. Fees at 9.75%)
4) $  227.30   (Interest on Attorneys' Fees
              and Costs at 9.75%)

$6,584.80   TOTAL as of 3/1/89

The requests by both Wells Fargo and the Debtor for sanctions are hereby denied. Counsel for Wells Fargo will prepare and submit a proposed order consistent with this memorandum of decision.

---

7.  See *Matter of 268 Ltd.*, 789 F.2d 674, 676 (9th Cir.1986) ("When an oversecured creditor seeks interest on his or her claim, the bankruptcy courts apply the security agreement's interest rate.")

8.  Total charges and fees (excluding attorneys' fees) amount to $2,971.08.  9.75% of that sum is $289.68 (annual) or $.79 per diem.  Thus the total due as of March 1, 1989 (304 days from close of escrow) is $241.27 and will accrue at $.79 per day thereafter.

9.  Wells Fargo incurred a total of $2021.55 in allowed fees and costs as of May 1, 1988.  Thus, at 9.75% interest, the total due and payable for that period would be approximately $164.16 as of March 1, 1989.  ($.54/day × 304 days = $164.16).

Wells Fargo incurred the following aggregate billings for the months following the close of escrow for attorneys' fees and costs;

Total Interest Due as of 3/1/89 = $63.14

Consequently, a total of $227.30 interest is due on attorneys' fees and costs from the close of escrow up until March 1, 1989.