**In re RIKER INDUSTRIES, INC., Debtor.**

**Bankruptcy No. 90–01422.**

United States Bankruptcy Court, N.D. Ohio, W.D.

Nov. 21, 1990.

**6.** This Memorandum shall constitute findings of fact and conclusions of law pursuant to Bank-  ruptcy Rule 7052.

John J. Hunter, Thomas Schank, Toledo, Ohio, for trustee.

Henry J. Riordan, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., Verne Armstrong, Asst. U.S. Atty., Toledo, Ohio, for U.S.

Samuel Osnowitz, Toledo, Ohio, for Deborah Stasiak.

Suzanne C. Mandross, Toledo, Ohio, for Lucas County.

Richard D. Speich, Spring Green, Wis.

Steven Howell, Ralph McKee, Detroit, Mich., for NBD.

Kenneth C. Baker, Toledo, Ohio, for J.D. Riker.

Eugene F. Canestraro, Toledo, Ohio, for Alpha Tube.

## OPINION AND ORDER GRANTING PAYMENT OF SECURED CLAIM, INTERIM COMPENSATION OF TRUSTEE AND COMPENSATION OF ATTORNEY FOR TRUSTEE

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter came on for hearing upon the joint motion by NBD Business Finance, Inc. and trustee for authority to pay secured claim; application for interim compensation of trustee; and application for compensation as attorney for trustee to which objections have been filed. Upon consideration of the evidence adduced at

the hearing, oral arguments of the parties, their briefs in support and the record herein, the court finds that NBD is entitled, pursuant to § 506(b), to reasonable attorneys' fees, costs or charges in the aggregate amount of $90,283.06; that the trustee is entitled to an interim commission in the amount of $20,000.00; and that the attorney for trustee is entitled to compensation in the amount of $7,331.25 and reimbursement of expenses in the amount of $86.97.

## FACTS

On April 27, 1990, an involuntary chapter 7 petition was filed against Debtor. As a result of Debtor's May 3, 1990 consent to involuntary petition, an order for relief under chapter 7 was entered on May 7, 1990. John J. Hunter was thereafter appointed interim trustee of this estate on May 10, 1990. At the time of the filing of the involuntary petition, Debtor was indebted to NBD Business Finance, Inc. (NBD) in the amount of $1,754,178.74. Report of NBD Business Finance, Inc. (July 18, 1990); Affidavit of Patrick J. Stewart (October 10, 1990). Debtor had pledged to NBD, as security for that indebtedness, its machinery, equipment and accounts receivable. *See* NBD's Response to United States of America's Motion to Alter, Exhibits A-3 (June 28, 1990). An offer to purchase substantially all the assets of Debtor corporation, excluding general intangibles and accounts receivable, for $1,350,000 was extended to the trustee. Motion for an Order Authorizing Sale of Property of the Estate Free & Clear of Liens at 3 (May 11, 1990). This offer was previously made to NBD after NBD began negotiations with purchasers in its attempt to liquidate its secured claim upon Debtor's assets, prior to the filing of the involuntary petition. Debtor had, previously, ceased operations and peacefully surrendered its assets to NBD on April 20, 1990. However, that sale ultimately resulted in a purchase price of $1,425,000. Report of Sale (May 30, 1990). Of those proceeds, $925,000 was paid to NBD on its secured claim and the remaining $500,000 was escrowed, in an interest bearing account, until further court order. Order Authorizing Sale of Property of the Estate Free & Clear of Liens (May 29, 1990). The trustee and NBD contend that an expeditious sale of Debtor's assets was necessary in order to retain the customer base, an essential element to the sale.

The debt due NBD has been paid in full, in part from the sale of assets and from the collection of accounts receivable, except for its § 506(b) claim currently before the court. Trustee's Financial Report as of 11/1/90 (November 2, 1990). In addition, to the $500,000 escrow account, representing the balance of proceeds from the sale, the trustee also currently holds funds from the collection of accounts receivable, in the amount of $104,380.79, upon which the U.S.A. and J.D. Riker claim a lien. Joint Report of Trustee and NBD (July 18, 1990). As a result of NBD's oversecured status, it has made demand upon the trustee pursuant to 11 U.S.C. § 506(b) for payment of certain expenses in the amount of $93,938.79. Joint Motion by NBD Business Finance, Inc. (August 27, 1990). These amounts represent payment to the following entities:

| Entity | Amount |
|---|---|
| Honigman Miller Schwartz and Cohn Attys. for NBD fees and expenses through 4/27 | $27,952.95 |
| Pepper Hamilton & Scheetz Attys. for Riker, fees through 4/27 | 3,300.00 |
| McTevia & Associates Management Services through 4/27 | 8,810.80 |
| Norman Levy & Associates Appraisal Services | 3,900.00 |
| Honigman Miller Schwartz and Cohn fees and expenses from 4/28 to 8/3 | 37,810.54 |
| Pepper Hamilton & Scheetz fees pro-rated after 4/27 | 4,200.00 |
| McTevia & Associates fees after 4/27 | 4,964.50 |
| Frank Durniat preparation of schedules | 3,000.00 |

NBD seeks an additional $7,805.88 for storage charges claimed by the landlord of the premises formerly leased by Debtor. Brief in Response to Objections at 2 (September 24, 1990). Thus, NBD seeks payment of $101,744.67 for "fees, costs, or charges provided for under the agreement under which [its] claim arose." 11 U.S.C. § 506(b).

The United States of America (USA) objects to NBD's request for the reasons that NBD has requested an unreasonable amount of compensation; that NBD has not been authorized to work for the estate; and that the services allegedly performed

by NBD were not a reasonable, necessary cost of preserving, or disposing of, property of the Debtor. Alpha Tube Corporation and Cynsco, Inc. concur in this objection.

The trustee has also filed an application requesting interim compensation in the amount of $42,002.25. Objections to this request have been filed by J.D. Riker, who asserts that the trustee's application should be reduced by $12,863.83, representing collection by NBD of certain accounts receivable in the amount of $428,794.28. Objection to Trustee's Application for Allowance at 2 (July 24, 1990). The USA also objects for the reasons that it does not consent to any use of any assets of the Debtor; that the trustee's commission is not a reasonable, necessary cost or expense preserving, or disposing of, property of the Debtor; that the trustee is not entitled to a commission on the secured property; that the requested amount exceeds the limitations on compensation pursuant to 11 U.S.C. § 326 and has included liquidation of items that are fully secured; and that other third parties have performed the majority of services in administering this estate. In response to these objections, the trustee contends that an agreement was reached with NBD, allowing it to collect accounts receivable and provide an accounting to the trustee, in order to speed collection of these accounts and obviate any confusion regarding the appropriate payee of these amounts.

The attorney for trustee has also filed an application for compensation seeking the sum of $9,971.25 for services rendered and $86.97 as reimbursement of expenses. As a result of an objection filed by J.D. Riker to this application, the attorney for trustee has reduced his fee application by $1,408.50, requesting the sum of $8,562.75 for services rendered. *See* Response to Objection of J.D. Riker (August 10, 1990). The USA has also objected to this application for those same reasons previously stated. *See supra.* p. 968. Detail of the amounts and entities to which payment is requested follows.

## DISCUSSION

The court will discuss separately each application.

### NBD Business Finance, Inc.

NBD requests payment of its secured claim pursuant to 11 U.S.C. § 506(b) which provides that:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

Under this section, a creditor must satisfy four requirements if its fees and costs are to be allowed as part of its claim, to-wit:

1) the creditor must have an allowed secured claim;

2) the creditor's security agreement must provide for the requested amount;

3) the creditor must be oversecured; and

4) the fee requested must be reasonable.

*In re Josephs*, 108 B.R. 654, 656 (Bkrtcy.N. D.Ill.1989) (citations omitted). *See also In re Kroh Bros. Development Co.*, 105 B.R. 515, 521 (Bkrtcy.W.D.Mo.1989) (factors to consider include: 1) whether legal services are authorized by the loan agreement; 2) whether legal services are necessary to promote client's interest; 3) whether legal services are permitted under applicable law and code; 4) whether legal services are compatible with bankruptcy policy as derived from code and cases; 5) whether time spent is appropriate to complexity of task; 6) whether hourly rate is appropriate under bankruptcy standards; 7) whether task has been assigned to fewest and least possible senior attorneys able to render the service in a competent and efficient manner; 8) whether fee should be adjusted to reflect duplicative services rendered by attorneys representing other parties with a common interest in the case; and 9) whether fee should be adjusted to reflect the court's observation of nature of the case and administration); *In re Melbell Associates, Inc.* 99 B.R. 31, 35 (Bkrtcy.E.D.Cal.1989)

(generally, allowance of attorneys' fees and costs is mandatory when they are provided for in the underlying agreement, when the creditor is oversecured and so long as those fees and costs are reasonable).

There appears to be no dispute that NBD holds an allowed, secured claim and is an oversecured creditor. As evidenced from the sale proceeds and subsequent collection of accounts receivable, the value of the collateral securing NBD's approximately $1,700,000 claim approaches $2,000,000 ($1,425,000 (sale proceeds) + $428,794.28 (accounts receivable collected by NBD) + $156,810.92 (accounts receivable collected by the trustee)). Furthermore, the security agreement between Debtor and NBD specifically provides that NBD may recover

costs and expenses includ[ing] reasonable attorneys' fees and court costs incurred by [NBD] in obtaining legal advice regarding this Agreement or in enforcing payment of [Debtor's] obligations or to obtain payment of any of the receivables or to perfect, renew or extend [NBD's] security interest or to defend any action or proceeding related to this agreement or any receivables, inventory or other collateral, including any costs and expenses of any proceeding in which [NBD] is involved with [Debtor] or any customer ... such as the costs and fees of lifting the automatic stay, the costs of preserving and liquidating the receivables and inventory and the amount of all unpaid taxes and similar charges.

NBD's Response to USA's Motion to Alter, Exhibit A at 5–6, Exhibit B at 3–4.

■■■ The court has broad discretion in determining "reasonableness" and must avoid the waste of estate assets. *Josephs*, 108 B.R. at 656 (citations omitted). *See also In re Rubenstein*, 105 B.R. 198, 203 (Bkrtcy.D.Conn.1989) (it is inherently unreasonable to ask a Debtor to reimburse attorneys' fees incurred by a creditor that are not cost-justified either by the economics of the situation or necessary to preservation of the creditors' interest in light of the legal issues involved (citations omitted)); *Kroh Bros.*, 105 B.R. at 520 (court must independently investigate the request to determine its reasonableness and to prevent overreaching by attorneys in an at-

tempt to be paid fees from the estate, avoiding wasteful diversion of an estate at the hands of the secured creditor who, knowing that the estate must foot the bills, fails to exercise restraint in enforcement of expenses (citations omitted)). "Reasonable" includes those actions which a similarly situated creditor might have taken. *Melbell Associates, Inc.*, 99 B.R. at 35 (citation omitted). *See also In re Reposa*, 94 B.R. 257, 261 (Bkrtcy.D.R.I.1988) (reasonable is that which is necessary to collect and protect the claim). Lastly, the burden of proving the reasonableness of the request is on NBD. *In re Gillette Assoc., Ltd.*, 101 B.R. 866, 19 B.C.D. 767 (Bkrtcy. N.D.Ohio 1989). NBD's request includes payment to several entities in varying amounts. Each will be separately analyzed.

### Attorneys for NBD

NBD requests $65,763.49 for payment to its law firm, Honigman Miller Schwartz and Cohn, for fees and expenses through April 27, 1990 in the amount of $27,952.95 and for fees and expenses from April 28 to August 3, 1990 in the amount of $37,810.54. Detailed time records regarding the fees requested have been submitted. *See* Amendment to Joint Motion by NBD, Exhibit A.

At the outset, although NBD claims that §§ 327–330 and Rule 2016 are not applicable, it has, in response to the court's request, submitted an itemization of services it provided in order to assist the court in determining the reasonableness of the fees requested. Amendment to Joint Motion by NBD at 1. Although the detail necessary for determining payment of a § 506(b) claim may be in issue, court finds that, in assessing the reasonableness of the request, the court must minimally:

1. determine the nature and the extent of the services supplied by the attorney with reference to the time and labor records submitted;

2. ascertain the value of the services; and

3. briefly explain the findings and reasons upon which the award is based.

*In Re Hudson Shipbuilders, Inc.*, 794 F.2d 1051, 1058 (5th Cir.1986).

■ Upon review of the time records submitted for Honigman, *see* Amendment to Joint Motion by NBD, Exhibit A, the court finds that NBD has failed to carry its burden in proving the reasonableness of certain entries as a result of its failure to detail certain services. That is, the following entries fail to describe the content of telephone conversations, conferences and research:

| Date | Time |
|------|------|
| 2/2/90 | 3.00 |
| 2/5/90 | .25 |
| 2/22/90 | 1.00 |
| 2/23/90 | 1.25 |
| 3/7/90 | .25 |
| 3/12/90 | .25 |
| 3/19/90 | .25 |
| 3/27/90 | .75 |
| 3/29/90 | 1.25 |
| 3/30/90 | 2.00 |
| 4/2/90 | 6.25 |
| 4/16/90 | .25 |
| 4/17/90 | .50 |
| 4/24/90 | 1.25 |
| 4/24/90 | .25 |
| 4/26/90 | .25 |
| 4/26/90 | 1.50 |
| 5/17/90 | .75 |
| 6/21/90 | .50 |
| 7/5/90 | .25 |
| 8/3/90 | .25 |
| 8/9/90 | 1.25 |

NBD's application must be of a "certain content and specificity." *Kroh Bros.*, 105 B.R. at 522.

Thus, when itemization of work performed is not sufficiently specific to identify the services rendered, the charges for those services will be disallowed. For these reasons, courts have required that the purpose, nature and substance of telephone calls, conferences, legal research, court appearances, depositions and preparation for court appearances or depositions be stated.

*Id.* (citations omitted). Because these entries are not sufficiently detailed, the court finds that NBD has failed to carry its burden in demonstrating the reasonableness of the requested fees associated with these services and the court will not, then, award compensation for these services.

Although counsel for NBD states that "portions of the description of services containing information protected by the attorney-client privilege have been deleted from the itemizations," the court cannot permit compensation for the entries listed above as it is unable to determine the "reasonableness" of the requested amounts. Amendment to Joint Motion by NBD at 2, n. 1 (September 14, 1990).

■ At this juncture, the court also notes that NBD fails to detail the miscellaneous costs of $1.75 and $198.00 for the months of March and August, respectively. Again, the court will not permit reimbursement for these costs as it is unable to determine the reasonableness of these amounts.

Notwithstanding reduction for the time spent on the above services, a further problem exists in determining the amount to be awarded Honigman. The hourly rate charged by each attorney is not known to the court. Rather, the total hours expended during a time period and the total fee requested for that same period are set forth; no break-down of that calculation has been submitted. As a result of the court's inability to reduce the amount requested by the charge for each attorney who performed that service, the court may only divide the total fee by the total hours for the time period, averaging the hourly rate for that period. Accordingly, the following amounts for the following time periods are allowed:

| | | | |
|------|------|------|------|
| February | $ 1,763.93 | (ave. rate | $213.81) |
| March | 4,662.60 | ( " " | 196.32) |
| April | 18,500.00 | ( " " | 161.22) |
| May | 23,366.20 | ( " " | 167.20) |
| June | 5,110.97 | ( " " | 135.39) |
| July | 8,295.40 | ( " " | 178.40) |
| August | 737.29 | ( " " | 173.48) |

The court will then permit NBD $62,436.39 representing payment to Honigman Miller Schwartz and Cohn for services performed by that firm on behalf of NBD.

■ Honigman also requests reimbursement for photocopying and document production charges in the amounts of: $21.40, $18.80, $144.80, $465.30, $616.40 and $131.90. The court does not want to involve itself in determining the reasonableness of the charge for a photocopy, yet, the court is unpersuaded, by the mere listing of this cost, that this amount represents a reasonable expense incurred by NBD.

> This court has been loath to impose stringent reporting requirements on copy expenses, such as that as has been imposed by some other courts which require the applicant to identify each copy, the reason it was made, the benefit to the estate, etc.

*Lederman Enterprises*, 106 B.R. 674, 687–88 (Bkrtcy.D.Colo.1989). Although the court's file is replete with documents and pleadings filed by NBD, in addition to numerous documents mailed to prospective purchasers of Debtor's assets, it finds the amount requested unreasonable. The court will, then, allow two-thirds of the photocopying and document production charges requested and, accordingly, will award $937.06 (67% × $1,398.60)

■ NBD also seeks, as payment to Honigman, $134.13 representing secretary overtime charges. The court finds that NBD is not entitled to reimbursement for this cost as it represents an overhead expense which must be "absorbed" by that law firm. *See Lederman Enterprises*, 106 B.R. at 687; *In re Ginji Corp.*, 117 B.R. 983, 993 (Bkrtcy.D.Nev.1990). Likewise, the court will not permit reimbursement for meals and, accordingly, disallows $25.48 requested by Honigman, through NBD. *See In re First Software, Corp.*, 79 B.R. 108, 120 (Bkrtcy.D.Mass.1987) (reimburseable expenses do not include meals, except when on extended travel).

■ Reimbursement for expenses associated with Lexis and Westlaw research is sought by Honigman in the total amount of $457.36. There exists a "split of authority on the compensability of LEXIS and WESTLAW research time." *In re Prairie Cent. Ry. Co.*, 87 B.R. 952, 960 (Bkrtcy.N. D.Ill.1988) (however, that court, following its earlier decisions, permitted reimbursement for computerized research). Initially, the court notes that no explanation regarding the specific issue researched, the necessity of the research and the use made of the research is detailed. *See First Software*, 79 B.R. at 112. For this reason, and because this court finds that such a cost represents an overhead expense which must be absorbed by the firm, the court will not permit reimbursement for the computerized research charged by Honigman.

■ The court finds the remainder of the expenses, which include courier service, telecopies, telephone charges, and U.C.C. searches, for which NBD, Honigman, seeks reimbursement, reasonable and will, accordingly, allow same in the amount of $1,428.43. The court notes that many of these charges were incurred by NBD in its attempt, prior to the filing of the involuntary petition, to liquidate Debtor's assets, voluntarily surrendered to it. As a result of this scenario, the court will permit this amount in full, representing reasonable costs.

Attorneys for Riker Industries, Inc.

■ NBD seeks, as payment to Pepper Hamilton & Scheetz, attorneys for Debtor, reimbursement for $3,300 for services pro-rated through April 27, 1990 and $4,200 for services pro-rated after April 27, 1990. At the hearing, counsel for NBD stated that as an expense of liquidation, it was necessary for NBD to allow Debtor the benefit of an attorney in order to facilitate negotiations for the sale of Debtor's assets. Because Debtor was without representation and the necessary financial resources to employ an attorney, NBD arranged for representation. *See* Brief in Response to Objections of the United States at 12 (September 24, 1990). NBD asserts that this was a reasonable action to take and that it agreed to payment of only $7,500, which does not represent payment of all services provided by that firm. *Id.*

The court finds an inherent conflict of interest concerning NBD's arrangement with this firm allowing it to represent the defaulting entity under the terms of the agreements between the parties. The court finds NBD's request not only unreasonable, but also unjustified "either by the economics of the situation or the necessity to preserve the creditor's interest." *Kroh Bros.*, 105 B.R. at 521. As an oversecured creditor, NBD is not entitled to compensation for every action it takes. *Id.* This court is responsible for preventing overreaching by an oversecured creditor in an attempt to be paid attorneys' fees from the estate; such is the case here and the court will permit no amount representing payment to Pepper Hamilton & Scheetz.

McTevia and Associates

NBD requests reimbursement for payment to McTevia & Associates in the amounts of $8,810.80 for services rendered through April 27, 1990 and $4,964.50 for services rendered thereafter. Mr. John McTevia testified that the nature of the services performed by McTevia & Associates are generally management and consulting services for companies faced with financial difficulties. In this case, Mr. McTevia stated that services rendered by this entity included securing the premises by changing the locks, posting of accounts receivable, checking the inventory, showing the facility to interested purchasers and other services to safeguard and preserve the estate assets. Although initially contacted by NBD to perform these services, the trustee retained McTevia at the site as he believed the services provided by the firm were of benefit to the estate.

▆ The IRS has objected to payment of the fees associated with McTevia for several reasons, including that prior to rendering services, McTevia should have been appointed as a professional person pursuant to § 327. United States' Memorandum of Law in Support of United States' Objections to Applications for Payments at 2–3 (September 17, 1990). The court does not agree. A professional person, for purposes of § 327, is a person who "plays a central role in the administration of Debtor's estate." *In re Neidig Corp.*, 117 B.R. 625, 628 (Bkrtcy.D.Colo.1990) (citation omitted).

*See also In re Leslie Oil and Gas Co., Inc.*, 98 B.R. 774, 775, 19 B.C.D. 734 (Bkrtcy.S.D.Ohio 1989). That is,

whether a person becomes a professional person for purposes of § 327(a) often "relates to the degree of autonomy within which the person will operate and the degree of supervision or direction required by the ... trustee." A primary purpose for requiring appointment and supervision by the court if a person is a professional within the meaning of § 327(a) is to "prevent abuse of the bankruptcy estate that may result from placing persons pursuing their own interests in autonomous positions over the estate."

\*       \*       \*       \*       \*       \*

Retention of major decision-making power in the Debtor and delegation to [person] only of routine administrative functions and services, without more, limits [person's] role to events in the ordinary course of the Debtor's business which are not central either to the bankruptcy proceeding or to major policy decisions. That distinction should keep [person] from becoming a "professional person."

*Leslie Oil*, 98 B.R. at 776.

The court finds that McTevia's services were not central to this bankruptcy case; rather, McTevia's services focused upon routine administrative functions. The court finds this objection not well taken.

▆ Furthermore, even if the court were to find that McTevia represents a professional person for which the trustee should have sought court approved employment, this court would grant such an application, nunc pro tunc, and permit the requested compensation.

Where such prior approval is not obtained, the court may consider the failure to obtain it as a factor bearing on denial of fees; but where circumstances warrant the court may also grant nunc pro tunc approval. Even if the approval is denied, the court may award some sum in quantum meruit, although such an award would not satisfy the requirements of §§ 327 et seq. . . .

*In re First Security Mortgage Company, Inc.,* 117 B.R. 1001, 1008 20 B.C.D. 1640 (Bkrtcy.N.D.Okla.1990) (citation omitted).

■ Upon review of McTevia's invoices, Exhibit B, and the detailed statement for services rendered, the court finds that the amounts requested for payment to McTevia are reasonable and properly chargeable by NBD under § 506(b). McTevia has rendered valuable services and in good faith. *See First Security Mortgage Company,* 117 B.R. 1001, 20 B.C.D. at 1644. Accordingly, the court will permit $13,775.30.

Norman Levy & Associates

■ NBD seeks reimbursement for payment to Norman Levy & Associates for appraisal services in the amount of $3,900.00. The court finds this amount reasonable. Obviously, an appraisal of those items to be sold was necessary to NBD in preserving and protecting its claim and comparing the appraisal fee, $3,900, to the sale proceeds, $1,425,000, the court is persuaded that this fee is both reasonable and necessary. *See Lederman Enterprises, Inc.,* 106 B.R. 674 (court finds that reasonable appraisal fees would be properly allowable under the language of the underlying agreements).

Frank Durniat

■ NBD seeks reimbursement for payment to Frank Durniat in the amount of $3,000 for preparation of schedules. An objection to payment to this individual was filed by Richard D. Speich, a former manufacturers representative for Debtor corporation. The court, too, has concerns regarding the "reasonableness" and, in fact, the propriety of payment to Mr. Durniat. Mr. Durniat, president of Debtor corporation, on May 3, 1990, on behalf of Debtor corporation, consented to entry of relief. A Debtor under chapter 7 has a duty to "file a list of creditors." 11 U.S.C. § 521(1). *See also In re Hill,* 117 B.R. 663 (Bkrtcy.N.D.Okla.1990). By consenting to relief, Debtor had a duty to prepare a list of its creditors. Counsel for NBD stated at the hearing that it was necessary, in order to facilitate the sale of Debtor's assets, that a schedule of creditors and addresses be prepared. Counsel indicated that there existed no one to prepare the matrix and, after negotiations, Mr. Durniat agreed to prepare same.

■ Notwithstanding the urgency of preparing the creditor matrix in order to expedite and facilitate the previously impending sale, the court is not persuaded that this cost represents a reasonable and necessary cost of preserving NBD's claim. Debtor is under a duty to file a list of creditors.

> When an act is required by these rules to be performed by a debtor ... and the debtor is not a natural person: (A) if the debtor is a corporation, "debtor" includes ... any ... of its officers, members of its board of directors ... a controlling stockholder or member, or any other person in control.

Bankruptcy Rule 9001(5). Thus, Mr. Durniat was under a duty to prepare the schedules; it was not a negotiable arrangement. By consenting to relief, Debtor, through Mr. Durniat, was obligated to file the matrix. The court may, if schedules are not prepared and file, "order the trustee, a petitioning creditor, committee, or other party to prepare and file" same and, accordingly, "approve reimbursement of the cost incurred." Bankruptcy Rule 1007(k). Such is not the case here. The court will not permit an award representing payment to Mr. Durniat, who on behalf of Debtor, prepared that which Debtor was under a duty to prepare.

Storage Charges

■ NBD requests reimbursement in the amount of $7,805.88 for storage charges from April 21 through April 26, resulting from storage of collateral after Debtor's voluntary surrender of same to NBD until the filing of the involuntary petition. Brief in Response to Objections of the United States at 13–14 (September 24, 1990). NBD has agreed to pay the landlord this amount and opines that it represents less than the rental rate under the lease. *Id.* The court finds that this rental cost represents a reasonable and necessary expense incurred by NBD in preserving and protecting its claim and will, then, permit this amount in full, $7,805.88.

### Trustee

The trustee, on July 13, 1990, applied for interim compensation in the amount of $42,002.25 representing the period from his appointment, May 10, 1990, through July 9, 1990. In support of his application, the trustee has attached an itemization of amounts received from various entities. The USA objects to the trustee's application for interim compensation for the reasons that it is based upon the sale of the Debtor's assets and that the USA objects to any use of these assets; that the trustee is not entitled to a commission on the secured property of the estate; that the requested compensation requests compensation for services not yet rendered; that the amount exceeds the limitations on trustee commission; and that the trustee played a minor role in administering the assets upon which he computes his commission. United States' Objection to Application for Interim Compensation of Trustee (August 15, 1990). J.D. Riker also objects to the trustee's application stating that "$428,794.28 of the Debtor's accounts receivable were collected directly by NBD, for which the trustee has claimed compensation in the amount of $12,863.83." Objection to Trustee's Application for Allowance of Interim Compensation (July 24, 1990). J.D. Riker contends that

> since the trustee performed no services in facilitating the collection of these accounts, and since these amounts were collected directly by a secured creditor which held a security interest in these accounts receivable, the trustee should not be allowed compensation for this recovery.

*Id.* at 1–2. The trustee, in responding to this objection, claims that NBD, prior to his appointment, had given notice to certain accounts that payment should be made directly to NBD. In order to obviate any confusion regarding payment of accounts receivable, the trustee, after negotiating with NBD, permitted NBD to continue collection of these accounts, agreeing that same would be treated as a part of the bankruptcy estate for which the trustee would be compensated. Response to Objection of J.D. Riker at 1 (August 10, 1990).

Section 326 fixes the maximum compensation afforded a trustee and allows a reasonable compensation for the trustee's services "upon all moneys disbursed or turned over in the case by the trustee to parties in interest ... including holders of secured claims." 11 U.S.C. § 326(a). The trustee's commission is calculated upon all receipts, including funds from collection of accounts receivable, proceeds from sales of assets, refunds of insurance premiums, and interest.

Initially, the trustee admitted that $428,794.28 of the accounts receivable were not deposited into the trustee's account, but were collected by NBD as a result of an agreement between the trustee and NBD. *See* Application for Interim Compensation of Trustee, Special History Ledger, Account NBD Business Finance at 1. Although the trustee opined that he permitted NBD to collect this amount and apply it to the outstanding indebtedness, in order to facilitate the collection process, because the trustee did not turnover this amount to a party in interest, the court finds that the trustee is not entitled to include this amount in calculation of his commission. Accordingly, the total amount upon which the trustee's commission may be calculated is reduced by $12,863.83, representing a 3% reduction for the $428,794.28 not collected by the trustee. Thus, the trustee would be entitled to allowance of a maximum commission of $29,138.42 ($42,002.25—$12,-863.83).

The court is also concerned with the content of the trustee's application. The trustee, as a fee applicant, has the burden to justify his request for compensation. *In re Baraban*, 106 B.R. 745, 747 (Bkrtcy.S.D.Fla.1989). *See also In re Orthopaedic Technology, Inc.*, 97 B.R. 596, 19 B.C.D. 40, 20 C.B.C.2d 722 (Bkrtcy.D. Colo.1989) (citation omitted). Likewise, Bankruptcy Rule 2016 is applicable to the trustee and he must detail the services rendered. *Baraban*, 106 B.R. at 747 (citations omitted); *Orthopaedic Technology*, 97 B.R. at 600. In *Orthopaedic Technology*, the trustee offered

only an accounting of the monies compiled from the assets liquidated by the trustee and a prayer for a commission based on that accounting which is equal to the maximum compensation permitted by § 326.

*Orthopaedic Technology*, 97 B.R. at 601. This same scenario is presented in the instant case.

The trustee opined at the hearing that he expended approximately 350 hours in performance of his trustee duties. His application requests compensation from May 10, 1990 until July 9, 1990, approximately eight weeks. Based on his estimated hours and considering the amount requested, reduced as discussed above, the trustee seeks compensation at the rate of $83.25 per hour (350 hours $\times$ $83.25 = $29,138.42). Although the court notes that 350 hours represent in excess of 40 hours per week spent over an eight week period, the total time spent represents services by the trustee, personally, and members of his staff. The court finds this amount to represent a reasonable request for compensation for services rendered as trustee. However the trustee is instructed to maintain contemporaneous time records, documenting his actual effort in future cases. *Baraban*, 106 B.R. at 747.

Without adequate time records containing information about the service rendered, the court cannot determine the time spent by the trustee ... the reasonableness of the services provided, or even the nature of the services allegedly provided. The court has no basis to determine a proper rate of compensation where the entity seeking compensation fails to comply with Bankruptcy Rule 2016.

On the other hand, this court has previously expressed its opinion to the effect that time records need not contain such excessive detail as to result in fee applications that are "of such enormous length and detail that they are of little ultimate value in awarding fees."

*Orthopaedic Technology*, 97 B.R. at 600 (citation omitted).

Finally, the IRS objects to the trustee's request for compensation for sev-

eral reasons including that the trustee is not entitled to a commission on secured property. Initially, the court notes that sale of substantially all of Debtor's assets resulted in receipt of $75,000 more than the original purchase price. *See supra* p. 2. Additionally, the exigent circumstances surrounding the sale permits some flexibility in the trustee's discretion concerning his judgment regarding the possibility of abandonment or sale. *See In re National Enterprise Wire Co., Inc.*, 103 B.R. 56 (Bkrtcy N.D.N.Y.1989). Furthermore, in *In re K.C. Mach. & Tool, Co.*, 816 F.2d 238 (6th Cir.1987), the sixth circuit, in determining "[w]hether the district court erred in reversing the bankruptcy court's order that the trustee abandon the machinery and fixtures to the debtor," concluded that "[a]dministration promises a benefit in this case by virtue of § 724(b)." *Id.* at 241, 247. *See In re Packard Properties, Ltd.*, 112 B.R. 154 (Bkrtcy.N.D.Tex.1990) (city tax claim subordinated to administrative claimants under § 724(b). In *K.C. Mach.*, the best purchase offer extended the trustee was for an amount less than the total outstanding liens on the property. *K.C. Mach.*, 816 F.2d at 240. However, that court found, and this court concludes, that section 724(b) permits the trustee to subordinate a tax lien, including that of the IRS, to certain claims, including wage claims, resulting in a benefit to the estate. Debtor's schedules reflect wage claimants approaching $132,000. *See* Schedule A–1 and Summary of Debts and Property. The sale of Debtor's assets, then, represents "[a] future value accruing to the estate [and] is a benefit promised by administration of the asset." *K.C. Mach.*, 816 F.2d at 246–47. Sale of Debtor's assets has resulted in a benefit to the estate, for which the trustee is entitled to a commission.

Although the court is sensitive to a trustee's involvement in the sale of fully secured property, the court, in the instant situation, finds that the trustee is entitled to a commission of $29,138.42. The court is informed that monies may be available for distribution to the unsecured creditors, although several litigious hurdles must be overcome, including lien avoidance issues before that result may be obtained and, as

stated, may result in monies available, after subordination of tax claims, to certain claimants. Based upon this assertion, the court will order payment of $20,000.00 to the trustee representing interim compensation of approximately 70% of that amount which the court, at this juncture, determines appropriate. The balance of the commission allowed shall be withheld subject to further order of the court.

### Attorney for Trustee

The attorney for the trustee filed an application for compensation on July 13, 1990, seeking $9,971.25 for services rendered and $86.97 as reimbursement of expenses. As a result of an objection by J.D. Riker to this application claiming that services valued at $1,651.50 involved work normally performed by a chapter 7 trustee, the attorney for the trustee reduced the amount sought for services rendered by $1,408.50 and now requests $8,562.75 as payment for services rendered. *See* Objection to Attorney for Trustee's Application for Payment at 1 (July 24, 1990) and Response to Objection of J.D. Riker (August 10, 1990). The USA has also objected to this application for the reasons that it objects to use of any assets of Debtor's estate; that the attorney is not entitled to fees from the secured property; that the attorney has failed to set forth the precise legal services rendered, time expended and expenses incurred; and that attorney's fees are sought for the performance of duties normally performed by the trustee.

■ At the outset, the court notes that the trustee filed an application to employ an attorney on May 11, 1990; said application was granted by order entered May 23, 1990. Although services by the trustee's attorney were performed as early as May 8, 1990, the court finds that denial of compensation as a result of services performed prior to appointment is inequitable. *See* discussion *supra* p. 972–973. Further-

more, the court finds that, based upon the exigent circumstances surrounding sale of Debtor's assets and the trustee's need for counsel, services performed by the trustee's attorney prior to entry of the order approving the employment does not permit denial of compensation for those services rendered.

■ Additionally, an entity seeking compensation "shall file with the court an application setting forth a detailed statement of the services rendered." Bankruptcy Rule 2016(a). The court, in accordance with 11 U.S.C. § 330(a)(1) must determine that the services rendered were necessary and reasonable. Finally, an applicant, seeking compensation, has the burden of proving entitlement to the requested amounts. *See Matter of Union Cartage Co.*, 56 B.R. 174 (Bkrtcy.N.D.Ohio 1986). Notwithstanding the USA's objection that the attorney for trustee has failed to set forth the precise legal services rendered, time expended and expenses incurred, the court finds the attorney for trustee's application is sufficiently detailed. However, the court has other concerns regarding this fee application.

Section 704 of title 11, setting forth the trustee's duties, states that the trustee shall—

(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

(2) be accountable for all property received;

■ The trustee's duties include liquidation of Debtor's estate. Therefore, the following entries, reflecting services performed by the trustee's attorney, are not compensable to the trustee's attorney for the reasons that these services are properly performed by the trustee and upon which the trustee's commission is based:

| Date | Services | | Amount | Atty. |
|------|----------|---|--------|-------|
| 5/10/90 | Telephone conference ...... | sale | 26.00 | JJH |
| | Preparation of ...... sale | | 65.00 | JJH |
| | Telephone conference ...... | same | 39.00 | JJH |

| Date | Services | Amount | Atty. |
|------|----------|--------|-------|
| 6/19/90 | Telephone conference ...... Stevenson | 65.00 | JJH |
| 5/11/90 | Telephone conference ...... purchasers | 37.50 | TJS |
| 5/14/90 | Telephone conference ...... sale | 37.50 | TJS |
| | Telephone conference ...... assets | 12.50 | TJS |
| | Telephone conference ...... services | 25.00 | TJS |
| | Telephone conference ...... sale | 12.50 | TJS |
| | Telephone conference ...... plant | 50.00 | TJS |
| | Telephone conference ...... assets | 12.50 | TJS |
| 5/15/90 | Telephone conference ...... assets | 12.50 | TJS |
| | Telephone conference ...... Tri–County | 12.50 | TJS |
| | Telephone conference ...... buyers | 37.50 | TJS |
| 5/16/90 | Telephone conference ...... goods | 25.00 | TJS |
| | Telephone conference ...... receivable | 25.00 | TJS |
| | Conference with trustee ...... accounts | 12.50 | TJS |
| 5/17/90 | Telephone conference ...... assets | 25.00 | TJS |
| | Telephone conference ...... business | 37.50 | TJS |
| | Telephone conference ...... business | 25.00 | TJS |
| | Conference with law clerk ...... bidders | 12.50 | TJS |
| | Telephone conference ...... assets | 12.50 | TJS |
| | Telephone conference ...... assets | 12.50 | TJS |
| | Telephone conference ...... assets | 25.00 | TJS |
| 5/18/90 | Telephone conference ...... goods | 25.00 | TJS |
| | Telephone conference ...... inventory | 12.50 | TJS |
| 6/11/90 | Telephone conference ...... receivable | 25.00 | TJS |
| 7/3/90 | Telephone conference ...... accounts | 37.50 | TJS |

The court finds that these services represent services properly performed by the trustee and will not, then, award compensation.

Another duty of the trustee for which his attorney seeks compensation concerns maintenance of the estate property. The following entries represent services for which the trustee, not his attorney, has been properly compensated:

| 5/11/90 | Trip to Riker ...... trustee | 125.00 | TJS |
|---------|------------------------------|--------|-----|
| 5/14/90 | Telephone conference ...... services | 12.50 | TJS |
| 5/15/90 | Telephone conference ...... schedules | 25.00 | TJS |
| | Trip to plant ...... invoices for same | 125.00 | TJS |
| | Trip to plant to check ...... security | 125.00 | TJS |
| 5/21/90 | Telephone conference ...... contact | 37.50 | TJS |
| 6/8/90 | Telephone conference ...... utilities | 24.00 | JR |

Again, because the court finds these services represent duties of the trustee, compensation to the trustee's attorney will not be awarded.

Based upon this review, the court finds that the trustee's attorney is entitled to compensation, after reduction for the above referenced services, in the amount of $7,331.25 representing payment for services rendered ($8,562.75—$1,231.50). Upon review of the attorney's request for reimbursement of expenses incurred, the court finds that same represents necessary and reasonable expenses and will permit the requested amount of $86.97.

In light of the foregoing, it is therefore

ORDERED that NBD Business Finance, Inc. be, and it hereby is, allowed pursuant to § 506(b), the following amounts:

| Honigman Miller Schwartz and Cohn | $64,801.88 |
|-----------------------------------|-----------|
| Pepper Hamilton & Scheetz | –0– |
| McTevia & Associates | 13,775.30 |
| Frank Durniat | –0– |
| Norman Levy & Associates | 3,900.00 |
| Storage | 7,805.88 |

representing reasonable fees, costs or charges in the aggregate amount of $90,283.06 for attorneys' fees and reasonable costs incurred as herein determined. It is further

ORDERED that John J. Hunter trustee be, and he hereby is, allowed a maximum commission in the amount of $29,138.42; $20,000.00 shall be paid as interim compensation and the balance shall be withheld subject to further order of the court. It is further

ORDERED that Thomas J. Schank, attorney for trustee, be and he hereby is, allowed compensation in the amount of $7,331.25 and reimbursement for expenses in the amount of $86.97.